UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN E. MCCULLOCH,<br><br>    Plaintiff,<br><br>    v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. 19-cv-07716-SI<br><br>**OPINION AND MEMORANDUM OF DECISION ON PLAINTIFF'S ERISA SECTION 1132(A)(1)(B) ACTION TO CLARIFY RIGHTS TO BENEFITS** |

Kristin McCulloch initiated this ERISA action after she was denied benefits under an employer-sponsored long-term disability group plan ("LTD Policy") administered by Hartford Insurance. The Court previously determined McCulloch qualified as disabled from her "own occupation" under the terms of the LTD Policy and entered partial judgment in her favor under Fed. R. Civ. P. 54(b). Dkt. No. 45. Now before the Court is McCulloch's claim against Hartford to clarify her "rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(A)(1)(B).

The Court held a bench trial on February 22, 2022. At issue is whether McCulloch qualifies as a Class 1 or Class 2 insured under the LTD Policy. Hartford maintains McCulloch is Class 2, which would cause her benefits to end after 36 months unless she is disabled from performing "any occupation" for which she is qualified. McCulloch argues she is Class 1, entitling her to benefits until age 65 as long as she remains disabled from performing the job she held previously. Under the terms of the LTD Policy, Class 1 covers employees "with a salary grade of 19 or higher," while Class 2 covers employees "with a salary grade less than 19." Based on the evidence admitted at trial, and as explained below, the Court finds McCulloch failed to carry her burden to establish by a preponderance of the evidence that she is Class 1 under the terms of the LTD Policy.

## LEGAL STANDARD

In a bench trial, the Court is required to make factual findings and conclusions of law, and state such findings and conclusions either on the record or in "an opinion or a memorandum of decision." Fed. R. Civ. P. 52(a); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). Unlike a motion for summary judgment, a court presiding in a bench trial "does not determine whether there is an issue of material fact, but actually decides" the disputed facts. *Prado v. Allied Domecq Spirits & Wine Grp. Disability Income Pol'y*, 800 F. Supp. 2d 1077, 1094 (N.D. Cal. 2011). This opinion provides the required findings of fact and conclusions of law for McCulloch's section 1132(a)(1)(B) claim against Hartford. Any finding of fact that actually constitutes a conclusion of law is adopted as such, and vice-versa.

## FINDINGS OF FACT[1]

The difference between Class 1 and Class 2 under the LTD Policy turns on whether an insured has a salary grade "of 19 or higher" or "less than 19." McCulloch has a Job Grade of "00." McCulloch maintains she has "a salary grade of 19 or higher" and is therefore Class 1. Based on the findings of fact set forth below and the conclusions of law that follow, the Court finds McCulloch has not established by a preponderance of the evidence that she belongs in Class 1.

**McCulloch's Employment at Truist**

1. In 2015, Truist Financial[2] hired Kristen McCulloch as a Vice President, Employee Benefit Insurance Agent. Ex. No. 13. That same year, McCulloch was promoted and

---

[1] The Court previously granted the parties' motions to file various documents and exhibits under seal. Dkt. No. 133. While that order remains in effect, the Court's factual findings may occasionally refer to materials which were filed under seal. For these facts, the Court determines that the public interest in disclosure outweighs the private interests articulated in the parties' motion to seal, and now exempts these *specific facts* (not the entirety of the exhibits from which they are derived) from the order granting the motion to seal.

[2] McCulloch was initially hired by BB&T Insurance of California, a wholly owned subsidiary of BB&T Corporation. In 2019, BB&T merged with other entities to form what is now known as Truist Financial Corporation. For simplicity, the Court refers to McCulloch's employer as Truist, its most recent name and iteration, unless otherwise necessitated by the facts.

1      her "Primary Official Title" changed to Senior Vice President. Ex. No. 3 at 008.

2. In her first year of employment, McCulloch was guaranteed a minimum commission of $350,0000. Ex. No. 13. After 12 months of employment, McCulloch was compensated pursuant to Truist's "commission compensation calculation." *Id*.

3. As Senior Vice President, McCulloch was assigned a "Job Grade" of "E00" in Truist's internal Human Resources management system, Workday. Ex. No. 3 at 008. The "E" stands for "Exempt" and is immaterial to the present dispute. *Id.* Thus, "E00" and "00," "E10" and "10," "E34" and "34," etc., are the same for purposes of evaluating the question posed by McCulloch. *See* Ex. No. 5 (listing McCulloch as "Job Grade: 00").

4. As of March 2018, McCulloch was classified as a "highly incented" employee with an annual "commission draw" of $270,000. Ex. No. 23.

5. A "highly incented" employee receives 50% or more of their base salary through commissions. Ex. No. 18 at 15; Pietrzak Depo. at 21: 2-11.

6. McCulloch did not manage people or processes. Reeder Depo. at 103:14-18.

**The Hartford LTD Policy**

7. As of January 1, 2004, Hartford Life and Accident Insurance Company had issued a group long-term disability policy ("LTD") to BB&T Corporation, which remained in effect after BB&T became Truist Financial. Ex. No. 1 (Policy No. GLT-67-4896).

8. Truist is the Plan Administrator and Plan Sponsor. Ex. No. 1 at 122.

9. Hartford is the Claim Administrator. *Id*.

10. Under the terms of the LTD Policy, Truist must give Hartford "any data necessary to administer the insurance provided by The Policy." Ex. No. 1 at 008.

11. The LTD Policy gives Truist "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions in the Plan." Ex. 1 at 80.

**The LTD Policy Benefit Structure**

12. The LTD Policy offered Truist employees two disability coverage options. Ex. No. 2.

United States District Court
Northern District of California

  a. Option 1 provided employees with 50% of the employee's "base salary" in the event of disability. *Id*. Under Option 1, Truist pays all premiums. *Id*.

  b. Option 2 provided employees with 60% of the employee's "base salary" in the event of disability. Under Option 2, Trust still contributed, but the insured employee also agreed to help pay the cost of the higher premium. *Id*.

13. The LTD Policy defines two Classes of "eligible insureds" for purposes of determining the duration of benefits depending on the extent of disability. Ex. No. 1 at 041.

  a. Class 1 insureds are entitled to benefit payments until age 65 insofar as they remain disabled from performing "the Essential Duties of Your Occupation" for the duration of the benefit period. Ex. No. 1 at 055. "Your Occupation" means "the Essential Duties of the job You are performing for Your Employer"—in this case, an insured's job at Truist. Ex. No. 1 at 059.

  b. Class 2 insureds will receive benefit payments for 36 months as long as they meet the "Your Occupation" standard, but payments will thereafter stop unless an insured is disabled from performing "any occupation" for which they are qualified by "education, training or experience… ." Ex. No. 1 at 055.

14. Insured are classified into Class 1 or Class 2 based on "salary grade." Ex. No. 1 at 041.

  a. Class 1 is for "[e]mployees with a salary grade of 19 or higher." *Id*.

  b. Class 2 is for "[e]mployees with a salary grade less than 19." *Id*.

**The Construction of Salary Grade**

15. Within Truist, salary grades of 19 or higher are reserved for "senior managers" responsible for managing people or processes. Reeder Depo. at 60:12-25, 61:1-19. However, Truist once gave a position titled "Senior Managing Director of Investment" a Job Grade of 00. Ex. No. 6.

16. Truist uses the terms "grade," "job grade," "compensation grade," and "salary grade" interchangeably. Reeder Depo. at 106:5-12; Yurkutat Depo. at 123:1-6.

17. A position with fixed compensation (as opposed to variable, commission-based pay)

4

will receive one of thirty-four "salary grade" designations from the Truist Compensation Department pursuant to the "Salary Administration and Job Evaluation Policy." Ex. Nos. 16, 17; Yurkutat Depo. at 77:9-13, 80:2-20, 113:12-21.

    **a.** Pursuant to the Job Evaluation Policy, the Compensation Department arranges salary grades in a chart beginning with E01 and ending with E34. Ex. No. 17.

    **b.** Each salary grade has a range with a minimum, midpoint, and maximum salary for each grade. Ex. No. 17; Yurkutat Depo. at 77:9-13, 80:2-20, 113:12-21.

    **c.** Salary ranges overlap, such that an employee earning the high-end of the "E09" salary grade range might make the same amount of money as an employee earning the low-end of the "E10" salary grade range. Ex. No. 17.

    **d.** To decide salary grade, the Compensation Department will analyze "internal and external compensation data" to make a "salary grade recommendation" for a given job. Ex. No. 16 at 03.

    **e.** The "E01" salary grade is reserved for newly-created jobs or employees in newly acquired subsidiaries that have not yet undergone the Job Evaluation Process. Pietrzak Depo. 50:9-22, 60:11-20; Yurkutat Depo. at 114:10-15.

    **f.** The Compensation Department's salary grade chart does not have a "E00" salary grade. Ex. No. 17.

**18.** Unlike fixed-pay jobs, positions with a Job Grade of E00 are "typically" paid "on a commission basis," and are therefore not included within the Compensation Department's salary grade chart because "their range of pay is, in most cases, effectively unlimited; and a pay range would not be appropriate for those roles." Yurkutat Depo. at 80:2-11. Stated differently, jobs assigned a Job Grade of E00 have "not yet been graded" pursuant to the Job Evaluation Policy and thus do not appear in the salary grade chart. Reeder Depo. at 77:11-25; 78:1-9.

**19.** A Job Grade of E00 does not necessarily denote a lower compensation relative to jobs with a Salary Grade of E01 and above. Pietrzak Depo at 20:2-17. The difference between E00, and E01 and above, is of kind, not degree. *Id*.; Reeder Depo. at 82:16-19.

**McCulloch's Benefits Determination**

20. In May 2015, McCulloch opted into Option 2 and paid the applicable premiums. Ex. Nos. 4, 3 at 024.

21. As of January 1, 2018, McCulloch continued to be enrolled in Option 2, which entitled her to a monthly benefit of $13,500 based on a $270,000 annual salary. Ex. No. 4.

22. An annual salary of $270,000 would be consistent with the range of certain salary grades above 19. Ex. No. 17 at 15.

23. On August 17, 2018, McCulloch applied for LTD Policy benefits. Dkt. No. 45.

24. The eligibility feed received by Hartford from Truist stated McCulloch's Job Grade was "00." Ex. No. 5.

25. On August 11, 2020, Truist's Vice President, Benefits Administration Manager informed McCulloch's counsel that her "job grade is E00. This is less than 19; therefore, she is included in Class 2 for LTD purposes." Ex. Nos. 35, 38.

26. On August 20, 2020, First Vice President and Assistant General Counsel for Truist informed McCulloch's counsel: "Ms. McCulloch was a salary grade E00…Under the LTD Policy, Ms. McCulloch would have been categorized as Class 2." Ex. No. 37.

27. In a deposition taken for the present lawsuit, Steven Reeder, Truist's Director of Benefits, testified that "grade zero, all grades under 19, grades zero through 18 are class two." Reeder Depo. at 89:22-23; 104:21-24.

28. Robert Yurkutat, Truist's Senior Total Rewards Compensation Manager, similarly testified in a deposition that McCulloch's job grade and salary grade were both "00," and that "00 is mathematically less than 19." Yurkutat Depo. at 122:21-25, 136:22-23.

29. Dianna Pietrzak, Senior Vice President, Compensation Manager, testified in a deposition that 00 "does not exist on the salary range. It's not a salary grade. It is a designation keyed into the job grade field, which is a required field." Pietrzak Depo. at 44:12-14.[3]

---

[3] Plaintiff submitted a supplemental Pietrzak Declaration on February 23, 2022. Dkt. No. 132. Defendant objected to the supplement. Dkt. No. 137. The objection is sustained only to the

**CONCLUSIONS OF LAW**

**A. Legal Framework**

    **1. The standard of review and McCulloch's burden**

"A denial of ERISA benefits challenged under 29 U.S.C. § 1132 'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686, 691 (9th Cir. 2017) (quoting *Firestone Tire & Rubber Co. v. Bruc*h, 489 U.S. 101, 115 (1989)). Various states, however, have enacted statutory prohibitions against discretionary clauses in disability insurance policies. When such a state bar exists, *de novo* review applies for section 1132 review. *See Gonda v. The Permanente Med. Grp., Inc.*, 10 F. Supp. 3d 1091, 1094 (N.D. Cal. 2014) (applying *de novo* review where California Ins. Code § 10110.6 bars discretionary clauses in insurance contracts); *Osborn by & through Petit v. Metro. Life Ins. Co.*, 160 F. Supp. 3d 1238, 1250 (D. Or. 2016) (holding that Washington Admin. Code 284-44-015 bans discretionary clauses in disability insurance policies and mandates *de novo* review when applicable).

A state bar exists here. Although the LTD Policy contains a clause vesting Truist with full discretion to make eligibility determinations and construe and interpret plan terms, McCulloch resided in California during her employment at Truist and until July 2018, when she relocated to Washington. Dkt. No. 143 at 11 (Trial Tr.). Both states ban discretionary clauses in disability insurance policies, requiring *de novo* review.

Under *de novo* review, the plan administrator's decision is given no deference—a court must determine "in the first instance" the correctness of the benefits decision. *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010). Generally, "only the evidence that was before the plan administrator at the time of determination should be considered," but the court may look outside the administrative record when "circumstances clearly establish" additional evidence is

---

extent the supplemental Pietrzak Declaration presents facts inconsistent with Pietrzak's prior testimony.

7

"necessary to conduct an adequate" *de novo* review of the benefit decision. *Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007).

"When the court reviews a plan administrator's decision under the *de novo* standard of review, the burden of proof is placed on the claimant." *Muniz*, 623 F.3d at 1294. The plaintiff-claimant "has the burden of proving by a preponderance of the evidence [their entitlement to benefits] under the terms of the plan." *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1162-63 (9th Cir. 2016). *See also, e.g.*, *Schwartz v. Metro. Life Ins. Co.*, 463 F.Supp.2d 971, 982 (D. Ariz. 2006) ("Plaintiff has the burden of proof to show that he was eligible for continued long term disability benefits based on the terms and conditions of the ERISA plan.").

**2. Applicable rules of contract interpretation**

Federal common law requires that terms in an ERISA insurance policy be interpreted "in an ordinary and popular sense as would a [person] of average intelligence and experience." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990). "When disputes arise as to the meaning of one or more terms" in an ERISA insurance policy, courts "first look to the explicit language of the agreement to determine the clear intent of the parties." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000). If the explicit language creates an "apparent" ambiguity "on the face of the contract," courts may then consider "extrinsic evidence of the parties' intent." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996); *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997). "An ambiguity exists when the terms or words of [an ERISA] plan are subject to more than one reasonable interpretation." *McDaniel*, 203 F.3d at 1110.

Only "if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations," may the court use the equitable doctrine of *contra proferentem* to resolve the ambiguity. *Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 625 (9th Cir. 2007) (quoting *Kunin v. Benefit Tr. Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990)). The doctrine of *contra proferentem* construes ambiguity against the insurer by "adopt[ing] the reasonable interpretation advanced" by the insured claimant. *Lang v. Long-Term*

8

*Disability Plan of Sponsor Applied Remote Technology, Inc.*, 125 F.3d 794, 799 (9th Cir. 1997). A court may also resolve ambiguity in such a way as to protect the insured's "reasonable expectations," even if such "expectations are contrary to the expressed intention of the insurer." *Saltarelli v. The Bob Barker Group Med. Trust*, 35 F.3d 382, 386-87 (9th Cir. 1994).

**B. Application of Legal Framework to Findings of Fact**

    **1. The operative term in the LTD Policy is not ambiguous**

McCulloch submits that the term "salary grade" in the LTD Policy should be understood in its ordinary dictionary sense as "the class, rank, or division of employees by level of compensation." Dkt. No. 140 at 18 (McCulloch's Proposed Findings of Fact and Conclusions of Law). Because her annual salary was quantitatively consistent with the salary ranges for certain salary grades above 19, McCulloch argues she is entitled to Class 1 treatment.

McCulloch is too quick to rely on dictionary definitions to interpret the policy terms. The operative term is not just "salary grade," but the totality of the phrase "salary grade of 19 or higher" (or, conversely, "salary grade of less than 19"). The term is not ambiguous. A insured of average intelligence and experience would understand that term the "salary grade of 19 or higher" refers to a specific company designation, not a freestanding ranking based on gross compensation.

This case is unlike *Miller v. UNUM Life Ins. Co. of Am.*, in which the court found the word "crime" in an insurance policy ambiguous because it was "amenable to at least two 'reasonable and fair interpretations.'" No. 221CV00716RGKAFM, 2022 WL 1055375, at *3 (C.D. Cal. Mar. 31, 2022). The *Miller* court reasoned that "[w]ithout a definition in the Policy, the term 'crime' could reasonably be interpreted either broadly—as covering all possible minor and severe violations of both California's Penal and Vehicle Code—or more narrowly, to apply only to violations of the Penal Code." *Id*. Here, the term "salary grade of 19 or higher" is not "fairly susceptible of two different interpretations." *Blankenship*, 486 F.3d 625. Adopting the interpretation advanced by McCulloch, which focuses only on the words "salary grade," would render the language "of 19 or higher" nugatory. Such an interpretation would not be "reasonable and fair." *See Richardson*, 112 F.3d at 985 ("Each provision in an agreement should be construed consistently with the entire

document such that no provision is rendered nugatory.").

It is of no consequence that the LTD Policy does not define "salary grade," because "salary grade" is not the operative term. In context, the meaning of the term "salary grade of 19 or higher" can be understood by a person of average intelligence and experience to refer to a position within a company's grading system. The case of *Vaccaro v. Liberty Life Assurance Co. of Bos*. provides an analogous scenario. No. 16-CV-03220-BLF, 2017 WL 5564910, at *10 (N.D. Cal. Nov. 20, 2017).

In *Vaccaro*, an ERISA policy issued by the employer, NetApp, included within Class 1 "CEO, President, Vice President, Corporate Officers, Directors, Managers, and Engineers." *Id*. The policy did not define these terms. The *Vaccaro* plaintiff's job title in her "NetApp Job Description" was "HR Program Mgr. 5." *Id*. The plaintiff thus argued she qualified as a "Manager" under the terms of the policy for Class 1 because her job title stated she was a "Mgr." *Id*. The insurer disagreed and argued the term "Managers" in the Class 1 definition referred, not to job *titles*, but to "Job Level," a different field in the "NetApp Job Description" (which, for the plaintiff, read "Individual Contributor"). *Id*. The court was unpersuaded by the insurance company's attempt to find an ambiguity in the Class 1 definition:

> **The capitalization of the positions indicates that they are formal job titles.** The Court thus concludes that a person of average intelligence and experience reasonably would understand that an employee with the job title of "CEO," "Vice President," or—as pertinent here—"Manager" is included in Class 1. **Nothing in this provision or any other provision of the 2015 Policy suggests that the listed positions denote anything other than job titles.** It is undisputed that Vaccaro's official "Job Title," as stated in the "NetApp Job Description," was "HR Program Mgr 5." Because the 2015 Policy states that "Managers" are Class 1 employees and NetApp itself identified Vaccaro as a "Manager," the Court concludes that the 2015 Policy unambiguously includes Vaccaro within the definition of Class 1 employees.

*Id*. (emphasis added and internal citation omitted). As in *Vaccaro*, the Court here finds the use of the specifier "of 19 or higher" in the LTD Policy indicates that "salary grade" refers to an internal grading system, not gross compensation. And like in *Vaccaro*, nothing in the LTD Policy itself suggests that "salary grade of 19 or higher" denotes "anything other than" what is plainly stated: To be eligible for Class 1, an insured must have a salary *grade* of 19 or higher. *See Vaccaro*, 2017 WL 5564910 at *10 ("[T]he 2015 Policy itself certainly gives no indication that an employee's job level

10

[here, gross compensation] is the key to classification of the employee as Class 1 or Class 2.")

A review of the Truist Compensation Department's salary grade chart further demonstrates the impropriety of adopting McCulloch's proposed interpretation. Because adjacent salary grades have overlapping salary ranges, adopting McCulloch's interpretation would enable an insured with a salary grade of 18 to claim eligibility as a Class 1 insured if their gross compensation overlapped, as it may, with the range for salary grade 19. The LTD Policy avoids such a result by drawing a bright-line based on salary grade, not an underlying metric that may inform the grade.

**2. McCulloch did not have a "salary grade of 19 or higher"**

McCulloch was not assigned a salary grade pursuant to the Compensation Department's Job Evaluation Policy because she was a "highly incented" employee that received most of her compensation through commissions rather than fixed earnings. However, McCulloch was assigned a Job Grade of E00. Truist employees in both the compensation and benefits department testified that the terms "salary grade" and "job grade" are used interchangeably, such that McCulloch's job grade of E00 was in-effect intended as a salary grade of 00, notwithstanding the lack of a classification through the Job Evaluation Policy. Although McCulloch insists the terms salary grade and job grade are not used interchangeably at Truist, Dkt. No. 16 (Rebuttal Brief), she fails to offer evidence to undermine the admitted deposition testimony that the terms are used interchangeably.

McCulloch's strongest argument for Class 1 treatment is that her salary of $270,000 was on par with some employees in Class 1. But as the Court explained above, gross salary is not the dispositive factor—it's salary grade. Because "evidence that [McCulloch] actually was a Class 1 employee is virtually nonexistent," the Court cannot find that McCulloch has carried her burden to demonstrate Class 1 eligibility. *Baird v. Unum Grp.*, 903 F. Supp. 2d 560, 566 (S.D. Ohio 2012) ("Not a single document in the file says she was [Class 1].").

These facts are sufficient to rule in Hartford's favor, as McCulloch has not carried her burden to establish that she belongs in Class 1 by a preponderance of the evidence. However, the Court will also consider the weight of the evidence in favor of finding that McCulloch belongs in Class 2, and finds it more likely than not that Class 2 is the proper classification.

11

**3. The evidence indicates McCulloch is Class 2**

As an alternative argument, McCulloch argues she should be deemed a Class 1 employee because the policy is ambiguous in the following respect: (1) she does not have a "salary grade," (2) her lack of "salary grade" means *neither* the Class 1 or Class 2 definition applies, rendering her ineligible for coverage; and (3) despite her ineligibility, Hartford continued to collect premiums for Option 2.  Even if the Court were to adopt the first premise of McCulloch's argument (it does not), the most that McCulloch may be entitled to is a finding that she is entitled to benefits. The Court would still need to separately evaluate the Class question.

As stated above, the Court rejects the premise that McCulloch had no salary grade.  The fact that her job was not graded under the Compensation Department's Job Evaluation Policy only establishes she did not have a salary grade that appeared on the Compensation Department's charts.  But the LTD Policy's Class definitions are not expressly tied to those charts.  Had the Class 1 and Class 2 definitions instead provided, respectively, "Class 1: Employees with a salary grade of 19 through 34," and "Class 2: Employees with a salary grade of 01 through 18," the omission of McCulloch's position from the Compensation Department's charts may call into question whether she was eligible for coverage at all.

But the Class definitions do not incorporate the limits set by the Compensation Department's charts.  The Class 2 definition contemplates *any* salary grade less than 19, which, to a person of average intelligence and experience, can be understood to include 00.  Such an approach is also consistent with the stated intent of Truist's employees, who stated in August 2020 that McCulloch, having a job grade of 00, falls within Class 2.  Thus, "the evidence that she was a Class 2 employee, while not terribly strong, is more persuasive than the evidence she was a Class 1 employee, and the Court so finds." *Baird*, 903 F. Supp. 2d at 567.

///

///

**CONCLUSION**

Based on the foregoing findings of fact and conclusions of law, the Court finds McCulloch has failed to establish it is more likely than not that she is a Class 1 inured. Hartford's determination that McCulloch is a Class 2 insured under the terms of the LTD Policy is therefore correct.

**IT IS SO ORDERED**.

Dated: June 14, 2022

_____
SUSAN ILLSTON
United States District Judge

13